Lawrence, J.
The relators show that they are citizens of the state of Hew York, of full age, and have resided in the state more than one year, four months in the county and thirty days in the election district, and that they are duly qualified and entitled by virtue of such citizenship and residence to appear and be registered as voters at the next general election; that on the 24th of October, inst., they each appeared before said inspectors for said thirty-fourth election district, some of them as early a^Y.45 o’clock p. m., and all of them before the hour of nine o’clock, p. m., for the purpose of being sworn and examined as-to their qualifications as voters and for the purpose of being registered as required by law. It also appears from the affidavits that each of the relators remained continually in the place of registration from the time of his entry therein up to nine o’clock p. m., and that each demanded that the said board of inspectors should register his name, and requested to be sworn by them, but that the said hoard of inspectors declared *473 the registry closed at nine p. m. and refused to enter the relators’ names on the registry, &c. The act relating to the 3’egistration of voters in the city and county of New York (chap. 24 of chap. 410 of the Consolidation act of 1882, as amended April 21,1883), provides (sec. 1858) that the inspectors of election appointed pursuant to the provisions of this chapter, shall at the times in this chapter designated for a general registration, meet in their respective election districts, at the places which, as provided in this chapter, shall be designated therein for such meetings, and at such times in each election district the said inspector’s of election shall openly and publicly do and perform the following acts, viz.: 1. They shall organize as a board by selecting one of their number to act as chairman; but in the case of failure to so organize within fifteen minutes after the time fixed for the meeting, the chairman shall be selected by lot. 2. They shall receive the application for registration of such male residents of their several election districts as then are, or on the day of election next following the day of making such applications would be, entitled to vote therein, and who shall personally present themselves, and such only. 3. They shall remain in session on each of said days between the hours of eight o’clock in the morning and nine o’clock in the evening, and shall administer to all persons who personally apply to register the following oath of affirmation, viz.: “You do solemnly swear (or affirm) that you will fully and truly answer all such questions as shall be put to you touching your place of residence, name, place of birth, your qualifications as an elector and your right as such to register and vote under the laws of this state.” The next subdivision of this section relates to the entries to be made in the registry, and it is not necessary to set it forth at length. The question in these cases is whether the books of registry are to be closed at nine o’clock in the evening, although duly qualified voters are within the place of registration demanding to be sworn as to their qualifications as voters, or whether it is the duty of the inspectors to register *474 all such voters as may have made application for registration, and are within the place of registration at the hour of nine in the evening. I am of the opinion that it is the duty of the inspectors to register every duly qualified voter who presents himself within the place of registration before the hour of nine o’clock in the evening and demands to be sworn, and that the true construction of the statute is that the place of registration shall be closed at that hour, but not that the inspectors shall refuse after that hour to register those whe have applied within the time prescribed by law. The object of the registry law is to enable it to be ascertained who are duly qualified voters. The electors are required to present themselves within certain hours for the purpose of having their qualifications ascertained in each of these cases. The affidavits show that the relators personally presented themselves for registration before the hour for closing the place of registry had arrived. Surely they should not be deprived of their right to vote when they have done everything which the law required them to do, for the purpose of proving their qualifications as electors. E am strengthened in this conclusion when I compare the phraseology of section 1843 of the. act with that of section 1858. Section 1843 provides “ that at all elections hereafter held in the city and county of blew York, the polls shall be opened at six o’clock in the morning and closed at. four o’clock in the afternoon.” The language of subdivision 3 of section 1858 is that the inspectors “ shall remain in session on each of said days, between the hours of eight o’clock in the morning and nine o’clock in the evening, and shall administer to all persons who personally apply to-register the following oath,” &e. There is no positive provision that the inspectors shall close their books at nine o’clock in the evening if there are persons waiting to be registered who áre duly qualified as voters and who have appeared before them before nine o’clock. In section 1843 the.mandate is that “ the polls shall be closed at four o’clock.” The language of section 1858 is not mandatory as to the closing of the- *475 books, and there is nothing in it from which it can be inferred that the books are to be closed and thereby duly qualified electors deprived of their registration,, although they have done everything within their power to obtain such registration, and are personally present before the inspectors when the hour of nine in the evening arrives. The affidavit presented on behalf of the relator Hr. Sherwood is defective, inasmuch as-it is simply corroborative of the affidavit of Cass, and does not show that Sherwood made the same demand in his own behalf as Cass made. The ¿intention undoubtedly was to-adopt the affidavit of Cass, and to allege that the same facts existed in the case of Sherwood; but the affidavit does not state so. In all the other cases I shall direct that peremptory writs issue, but until a further affidavit is presented on behaL Hr. Sherwood his motion must be denied.